November 22, 1522, United States v. Booth. Good morning. Good morning, Your Honors. My name is Colleen Cassidy and I represent Mr. Booth on appeal. From his sentence for supervised release violation. Booth was originally charged with nine violations of supervised release, alleging mostly New York state law offenses that were all dismissed in state court. We're familiar with the facts. Could I start by asking one question? Am I right that the prison sentence that was imposed is now moot? Yes, he's served his sentence. So the only thing that is at issue remaining is the supervised release portion of the sentence? That's correct, Your Honor. Okay. What I want to find out is how did this get to be moot? Because I'm concerned institutionally here that this is a case in which both sides took the maximum amount of time available to write their briefs, which already accounts for six months, starting from the date of the sentence. Then no one moved for expedited appeal. No one moved for expedition of the oral argument. And we're now in a position where if we agree with your substantive argument that this was an excessive sentence, there's nothing we can do about it, at least as regards the harshest part of the sentence. And that that concerns me. Your Honor, I understand your concern. And it should have been sped up. I don't remember how that happened. I probably was assigned well into the period. I don't mean to criticize you. I'm familiar with your work over the years. I'm not saying this is somehow incompetent. And I do understand that the federal defenders have lots of cases and work on them in the order that they come up. And until you know what issues you're going to raise, it's not so easy to figure out what's – maybe you're going to be attacking the plea rather than the sentence. And then you have to get the transcripts and all of that. But I'm just concerned about is there some way institutionally of identifying cases where what is likely to be challenged is a sentence and where the sentence is short that somebody – and I'm afraid it's got to be you folks. It's got to be the defense bar. It's not the government's business, although maybe it should be, to pay some attention to the fact that the argument that's being made could be mooted out if they don't expedite things.  We don't have people who are going to read all the briefs and say, ah-ha, here's what this person really wants, and that has to happen soon or it's not going to happen. Quirk's personnel don't read the briefs. Right. We should have moved to expedite this. I can tell you, Your Honor, that we have recently changed our procedure in the office based on a few cases like this to assign the cases before the record is complete. That's helpful for me to understand because I think that is – that would be a useful – if that's part of the problem, that would be a useful potential remedy. Yeah, formerly we – the lawyers didn't get the case until the record was complete, and that would entail delay already. So – and sometimes that was into the 90-day period. So now we do – But then the question becomes – so now that we can turn to the merits – I'm sorry I've taken up most of your time – is what would be the argument that – But what about keeping Mr. Booth on supervised release? How is that excessive? Well, just to explain how intrusive and onerous the supervised release is for Mr. Booth, he's got nine and a half months left. He was sentenced in 2015 to three years in prison and three years supervised release. He's now passed eight years, and he still faces almost another year of supervised release. And in terms of the level of intrusion into his life, I note that one of – just in this case, one of the nine violations was an allegation that he had left the district to go out to the beach in Nassau County to go swimming in July. And so it's that level of management of someone's life and intrusion that – it is still a serious sentence. Supervised release is a very serious part of the sentence. I get that it's a serious part of the sentence. But on the other hand, given his record, if one's looking at sort of the pure punitive aspect, one might say, well, if the only thing that is at stake here is a very minor level of assault, that might seem like too much punishment. But taken all in all in light of his record, why is it not entirely reasonable to say, you know, this is a person who is dangerous if not required to be under supervision? Because, Your Honor, the only conduct that he pled guilty to, and the government agreed to this to dismiss the more serious charges, was an extremely minor episode. This was an extremely minor act of harassment, second-degree harassment, a 15-day violation. And it seems clear that even though the court at the sentencing said that the court was not relying on the more serious dismissed allegations of assault, which were never proven, because it could not rely on those under the law, it clearly had those in mind. In every way that it characterized this particular conduct, it characterized it as assault, three times referred to it as assault, as gravely serious, and as egregious conduct, unusually egregious. It simply was not that under any objective measure. What happened in this case was Mr. Booth, and it's undisputed that he was not living with Ms. Rivera. He was staying away from her. He moved out, as advised by the court. He got away from her. He was living his own life, minding his own business. And she barged over, banging on his door, hysterically screaming. He opened the door, which was a mistake, he admitted, and he grabbed her around the waist. That is not assault. It's at most a battery. The assaults were all dismissed, and the government never proved them. But he then does the good thing of removing himself from the situation and steals her car. He doesn't just walk away. He takes her car. She got it back. And then he makes a phone call to her, which is hard not to read as a threat. Well, Your Honor, I think there's really nothing in that that's threatening any kind of violence. I mean, what their history had been. There are consequences, is sort of the message. And it's not just for her, which I suppose you could write off too. If you call the police, then the police get involved, and they may arrest you for your conduct. But then the sister, why does the sister have to worry about those things? Well, all he said was, you think I'm going to jail and nothing happened to you? She called him, first of all, and said, I reported you to the police. And so he called back and left a message in response to that. You think I'm going to jail and nothing happened to you? Good luck with that. There's no threat, and he said, and you and your sister. That's not suggesting something's going to happen to her? It suggests that she's going to be reported. And that's what they've done before. In the past, their last fight, they both reported each other. There were two criminal complaints filed. Both were dismissed. He had called the police on her in the past. She had beaten him in the past, and he called the police. They called the police on each other. They had a very toxic relationship. And the other thing was, by the time he appeared for sentencing, because of the pandemic, he had been left unsupervised release for 20 months and had no contact, none whatsoever, with her. Had stayed far, far away. He had a new relationship. His probation officer recommended no more supervised release and said that he had had a light bulb moment and he was rehabilitated. The judge was very mad at the probation officer for saying that and told him that that was just a tragically wrong, I forget the language, recommendation. So ultimately, after the court dressed him down for that, he said, well, maybe a small term of supervised release, but not the maximum. He thought he should have been terminated at that point. So. Thank you. We'll hear from the government. Good afternoon, Your Honors. May it please the court. My name is Kevin Sullivan. I'm an assistant United States attorney, and I represent the United States in this appeal. I'd like to first turn, Judge Lynch, to your question of the imposition or the effect of supervised release at this point. One thing I'd like to highlight for the court is that Judge Engelmeyer was very focused on the rehabilitative purpose of supervised release, imposing the term that he did. He was focused on that the first time around with the first violation. He imposed mental health counseling and anger management. It didn't work. That was after an equally lengthy term of imprisonment. And the second time around, he also imposed anger management and mental health counseling. And a focus of Judge Engelmeyer was to, as he put it, ease the defendant back into society, that this is a defendant with a violent past, with violent tendencies, and often to those closest to him, and that was a concern very much of the court. With respect to Mr. Booth's challenge to this sentence, Mr. Booth's argument that Judge Engelmeyer procedurally erred by relying on the disputed domestic violence allegations is without merit. There was no error, plain or otherwise. The judge was clear below that he was not considering any disputed facts or the prior August 2020 alleged incident of domestic violence. Booth's argument here boils down to that he does not believe Judge Engelmeyer and that Judge Engelmeyer cannot be taken at his word when he creates a very clear record. Because we do take him at his word. Then the question becomes, how do you characterize the behavior that was admitted as so egregious? That doesn't seem to make sense. So that seems to be, I don't say that means he was considering the other conduct. It means, doesn't that mean he was mischaracterizing the conduct or exaggerating the nature of the conduct that was admitted or the seriousness of the conduct that was admitted? No, Judge Lynch, I don't think he was. And to use his characterization of it, he said, here we have a recidivistic domestic assault by an offender with a history of violence who has not heeded the court's unusually explicit warnings, mind you, repeated warnings, that went so far as to warn the defendant with respect to the ultimate victim here, in this case, victim three. And that a sentence at the top of the guidelines was therefore, in his judgment, required. This was a defendant who, if you recall with the first violation, when victim three was on the horizon, as Judge Engelmeyer put it in that time around, where Judge Engelmeyer imposed, as he put it, a three-month no-fly zone, effectively. Once you get out from prison for three months, you're going to ease back in, and then after that, you can proceed to live with victim three. Within less than a month of residing with victim three, we have the first alleged incident in August. At that point, the parties put in a consent order that Judge Engelmeyer signed, that in effect, to be doubly sure that Mr. Booth, who had no contact with victim three, because there was, at that time, a state protective order in place. But to hold that over until the next conference, Judge Engelmeyer even ordered, entered his own order to that effect, to no contact. Now, yes, that order was only tied to a conference date that was eventually adjourned the following month. But what Judge Engelmeyer's concern here was, there was repeated directives from multiple judicial bodies with respect to this defendant's violent tendencies towards those closest to him, and that he had completely disregarded them. And so that informs, I think, Judge Engelmeyer's characterization of this being a recidivistic domestic violence offender. I see that. I have a few more seconds. And I think also to illustrate the point, Judge Engelmeyer noted that had he considered any of the other conduct here, the disputed facts regarding the November conduct, or had he considered the prior August conduct, that had the worst of that been proven, he would have, in fact, gone above guidelines. But he did not. With respect to Mr. Booth's substantive challenge to the sentence, Judge Engelmeyer did acknowledge the rehabilitation that took place in the term after the November 2020 conduct. Mind you, he was initially arrested and there was the initial violation petition in September of 2020. And for a period of time after the second incident in November, he did turn things around. But what Judge Engelmeyer was again focused on is the track record of this defendant. And on balance, he felt that there was a need to protect the public, to protect those in Mr. Booth's life, to afford adequate deterrence. And again, back to the original point about supervised release, to provide him with the services and the assistance to assimilate back into the community without those same violent tendencies. I see that my time is up. Unless the court has any other questions, we will rest on our brief. Thank you, Mr. Donovan. Ms. Cassie, you deserve a minute. So, Your Honors, my adversary's entire presentation here was based on the counts that were dismissed. He referred to the assaults, the incident in August that had been all dismissed, all charges were dismissed. There was no incident in August for him to be sentenced on. All of those charges, all of those assault charges had been dismissed by the government's agreement and there was no evidence proving them. We don't know what happened in August except that both parties made allegations, unproven allegations against each other. They certainly had a fight, but there was no domestic assault incident that was ever proven. And the government actually quoted the court's characterization of this case as a recidivist domestic assault, proving our point that this is how Judge Engelmeyer characterized it. Weren't there other supervised release violations before? There was an earlier one. So he had a supervised release violation earlier that he'd served his sentence on. Yeah, but that's what makes one a recidivist. Yes, but, well, that was one, but this wasn't recidivism of domestic assault because there was no assault proven. All there was was that he was minding his own business, she came over, barged into his house, and he grabbed her around the waist. That was it. That was the sole conduct that was established, admitted, and proven. And the government, Judge Engelmeyer wanted to hear more about the version that the government still kept pressing, despite the fact that it had dismissed the charges, still kept saying that he kicked her down the stairs, which was never, ever proven. And the government declined. The government said it didn't want a hearing. And it's still here, pressing this version of a domestic assault, which did not happen. There was no physical injury. There was no assault. There was a violation, harassment, at most a battery. So I feel like the government's made the point here in its presentation. Thank you, Your Honors. Thank you, Counsel. Thank you both. We'll take the case under advisement.